257 So.2d 9 (1971)
Thomas D. O'MALLEY, Etc., Appellant,
v.
The FLORIDA INSURANCE GUARANTY Association, Inc., Etc., et al., Appellee.
The FLORIDA INSURANCE GUARANTY ASSOCIATION, Inc., Etc., Appellant,
v.
Thomas D. O'MALLEY, Etc., et al., Appellee.
No. 41732.
Supreme Court of Florida.
December 16, 1971.
*10 Ciravolo & Feldman, Miami, and Robert E. Gibson, Tallahassee, for Thomas D. O'Malley, etc. and others.
Raymond Ehrlich, Jacksonville, of Mathews, Osborne & Ehrlich, for The Florida Insurance Guaranty Association, Inc., etc.
ERVIN, Justice.
We here consider an appeal from a decision of the Circuit Court of Leon County, Florida, invalidating Ch. 70-20, Laws of Florida 1970, which appears as F.S. Sections 631.50 to 631.67 F.S.A., inclusive, 1970 Supplement to the Florida Statutes, 1969. Ch. 70-20 created the Florida Insurance Guaranty Association, Inc., a non-profit corporation, as the mechanism for the payment of covered claims under certain classes of insurance policies of insurers which have become insolvent.
To raise the funds necessary to administer and pay covered claims and other expenses, the statute provides for an assessment on certain casualty insurers doing business in the state and selling the class of insurance policies involved.
First American Insurance Company, pursuant to order of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, dated February 23, 1971, was adjudicated insolvent and the Insurance Commissioner of Florida as Receiver was directed to liquidate the assets of said insurer.
Pursuant to the aforesaid adjudication, and the provisions of Chapter 70-20, an assessment was made on all insurers doing business in Florida and writing the classes of business written by the said First American Insurance Company.
Some affected insurers failed to pay the said assessment while others made payment alleging the unconstitutionality of the Act pursuant to which the assessment was made. A dispute arose between the Receiver and the Guaranty Association as to what constituted a covered claim as well as other questions involving the interpretation of the provisions of Chapter 70-20.
The failure of the insurers to pay the assessment and the dispute between the Receiver and the Guaranty Association culminated in an action for declaratory judgment being filed by both parties.
*11 Thomas D. O'Malley, as Treasurer and ex-officio Insurance Commissioner of the State of Florida and as Receiver of First American Insurance Company, together with The Florida Insurance Guaranty Association, Inc., a non-profit corporation, as appellants, on appeal here seek reversal of the Circuit Court judgment invalidating Ch. 70-20.
We reverse for the reasons hereinafter set forth.
The Circuit Court held Ch. 70-20 unconstitutional for several reasons, first, because Section 11(a) (12) of Article III of the State Constitution, F.S.A., provides there shall be no special law or general law of local application pertaining to a private corporation or granting any privilege to a private corporation.
We agree with appellants that Florida Insurance Guaranty Association, Inc., a non-profit corporation, created pursuant to Ch. 70-20, is not a special private corporation within the meaning of the above-referred to constitutional prohibition. It is a public corporation of statewide authority created for public purposes relevantly connected with the administration of government. Compare Forbes Pioneer Boat Line v. Board of Com'rs. (1919) 77 Fla. 742, 82 So. 346, and 8200 Realty Corporation v. Lindsay, Opinion of Court of Appeals, State of New York (1970) New York Law Journal, Volume 163  No. 127, July 2, 1970, p. 1.
Private corporations are those which have no official duties or concern with the affairs of government, are voluntarily organized and are not bound to perform any act solely for government benefit, but the primary object of which is the personal emolument of its stockholders. See McKim v. Odum (Md.) 3 Bland. 407, 418. Duval County v. Charleston Lumber Co., 45 Fla. 256, 33 So. 531.
Examples of public corporations in Florida are: the rural electrical cooperatives, city housing authorities, The Inter-American Cultural and Trade Center Authority, the Soil and Water Conservation Districts, and the Jacksonville Expressway Authority. Their business ordinarily is stipulated by the Legislature to fill a public need without private profit to any organizers or stockholders. Their function is to promote the public welfare and often they implement governmental regulations within the state's police power. In a word, they are organized for the benefit of the public.
The Guaranty Association considered here falls within the category just described. It is a public or quasi-public corporation. It is a legislatively declared "mechanism" to aid and benefit numerous citizens many of whom comply with state requirements in obtaining casualty and other insurance coverage for themselves and have suffered loss of the insurance protection they obtained because of the insolvency of their insurors.
Chapter 70-20 by reason of its described nature and purpose is a general law of statewide application in its operative effects and is not a local or special law. Compare State ex rel. Buford v. Shepard, 84 Fla. 206, 93 So. 667; State ex rel. Landis v. Harris, 120 Fla. 555, 163 So. 237; and Milk Commission v. Dade County Dairies, 145 Fla. 579, 200 So. 83. Being a general law for a statewide purpose although under it a public corporation has been created and functions as such, notice of intention to seek its enactment was not required by Sections 10 and 11(b) of Article III of the State Constitution since it has general and not limited application affecting only a particular locality.
The Circuit Court appears to have found Ch. 70-20 violative of several other specific provisions of the State Constitution, i.e. (1) Section 4(d) and (e) of Article IV which provides the comptroller as the state's fiscal officer shall settle and approve accounts against the state; and the treasurer shall keep all state funds and disburse the same only upon order of the *12 comptroller countersigned by the governor; (2) Section 1(c) and (d) of Article VII which provides no money shall be drawn from the treasury except in pursuance of appropriations made by law and that provision shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period; (3) Section 11 of Article VII which prohibits the issuance of state bonds pledging the full faith and credit of the state, except upon expressly stated conditions and prerequisites therein, and (4) Section 10 of Article VII which prohibits the state and any of its subdivisions, units or agencies from becoming a joint owner or stockholder of, or give, lend or use its taxing power or credit to any corporation, association or person, with certain expressly stated exceptions.
We do not find that Ch. 70-20 violates any of the constitutional provisions referred to in the foregoing paragraph.
It is true the funds derived by the Guaranty Association to pay insolvent claims of insured come from assessment of solvent insurers or from claims paid to the association by receivers of insolvent insurers. These funds are not required by Ch. 70-20 to be deposited in the state treasury and paid out in the same manner and by the same constitutional officers as are state tax funds. But such funds are not in the class of state tax revenue or general funds and do not come within the ambit of the constitutional provisions that govern the deposit and disbursement of state tax or general revenue funds. Compare State v. Florida State Improvement Commission, 1947, 158 Fla. 743, 30 So.2d 97. In that case assessments originally collected from self-insurer employers and employer workmen's compensation insurance carriers and paid into the administrative fund of the state workmen's compensation division of the Florida Industrial Commission were pledged and used to liquidate revenue certificates issued to finance the building in which the W.C. Division was housed. Such funds were held in that case not to be state tax funds nor the property of the state but were administered by the Industrial Commission, the State Treasurer being the mere custodian of them for that purpose. They were thus analogized to be trust funds not state funds and the cases of Lainhart v. Catts, 73 Fla. 735, 75 So. 47, relating to funds administered by the Board of Commissioners of the Everglades Drainage District, and State ex rel. Watson v. Caldwell (Fla. 1945), 156 Fla. 618, 23 So.2d 855, relating to funds administered by the Florida Improvement Commission, were cited in support.
We find nothing unconstitutional in the provisions of the Act authorizing the Guaranty Association to borrow money within the limitations and for the purposes provided in Ch. 70-20. In any event, the Constitution prohibits any borrowing to be accomplished by the Association in the name or on the credit of the State. No state tax revenues or funds can be pledged to repay the same. For that matter, the statute expressly provides no state funds of any kind shall be allocated or paid to said association. Sec. 631.57(e) (d). Section 631.241 F.S. 1969, F.S.A., prior to the enactment of Ch. 70-20 empowered the State Insurance Department to borrow money and to secure its repayment by mortgage, pledge or otherwise of the property of an insolvent insurer. It is to be remembered that the dominant purpose of Ch. 70-20 is to avoid delay and to settle as soon as possible claims of insolvent insurers which are ripe for payment. Borrowing funds for this purpose within the strict limitations of the statute appears to be a legitimate legislative objection not violative of the Constitution.
In conclusion, we note we have carefully scrutinized all the provisions embraced in Section 631.50 to 631.67 F.S. (derived from Chapter 70-20 and Chapter 70-439) 1970 supplement and the restructuring corrective measure House Bill 29-D, Ch. 71-970 of the Special Legislative Session *13 held in November and December, 1971. We find nothing therein contrary to the Constitution. These provisions are regulations applicable to certain casualty and other insurers doing business in the State and appear within the Legislature's province to exercise under the police power for the benefit of the public. The utilization of a public corporation as a means of implementing the objectives of the legislation appears in nowise to violate the State Constitution. The assessment requirements are similar in nature to those levied upon self-insurers and insurance carriers in the area of workmen's compensation. It has never been doubted that the Legislature could legally require assessment against stockholders of defaulting banks. See 4 Fla.Jur. Banks and Trust Companies § 88 and Bedenbaugh v. Lawrence (1940) 141 Fla. 341, 193 So. 74; 90 A.L.R. 1063.
The Constitution limits the Legislature in certain particulars in respect to the appropriation, use and disbursement of all state revenues which are not treated and dealt with as specific trust funds. Here there is no question but that the funds to pay claims of insureds of insolvent insurers are not state revenues but are treated throughout as trust funds separate and apart from general tax funds or other state revenue.
Adequate safeguards appear to be provided in the statute for the collection and use of the trust funds as far as it is humanly possible by law to safeguard their collection and use. There appears to be conferred in the State Insurance Commissioner adequate supervisory authority over the organization and operation of the Guaranty Association to protect the public interest.
The decision of the Circuit Court is reversed and the cause remanded for further proceedings in accordance herewith.
ROBERTS, C.J., and CARLTON, ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.