William J. Page, Jr. Secretary Department of Health and Rehabilitative Services Tallahassee
QUESTIONS:
1. Is a district mental health board a `state agency or subdivision' for the purposes of and within the scope of s.768.28, F. S.?
2. Are nonpublic service providers or subcontractors of the district mental health board, when performing services for mental patients whose fees are paid by the district board, within the scope of s. 768.28, F. S.?
SUMMARY:
A district mental health board is a quasi-public or public-quasi corporation or the governing body of a special district, and therefore, is within the definitional purview of s. 768.28, F. S. Hence, assuming the validity thereof, the limitations on liability specified therein are applicable to such board. However, private service providers or subcontractors (such as mental health clinics) are not, by virtue of their contractual relationship with the board, `state agencies or subdivisions' within the definitional purview of s. 768.28, F. S.
AS TO QUESTION 1:
Your first question is answered in the affirmative.
By the enactment of s. 768.28, F. S. (brought into the statutes by Ch. 73-313, Laws of Florida, and subsequently amended by Chs.74-235 and 77-86, Laws of Florida), the Legislature has waived sovereign immunity from tort liability for the state `and for its agencies or subdivisions' to the extent specified in the act. See
s. 768.28(5), F. S., which establishes monetary limitations on the state's waiver, and s. 768.28(9), which precludes the personal liability of officers, employees, or agents of the state or its subdivisions for their negligent acts or omissions in the scope of their employment unless committed `in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard to human rights, safety or property,' subject to the monetary limitations set forth in subsection (5) of s. 768.28.
The phrase `state agencies or subdivisions' has been defined by s.768.28(2), F. S., to include:
 . . . the executive departments, the legislature, the judicial branch, and the independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities. (Emphasis supplied.)
See also s. 1.01(9), F. S., which defines `political subdivision' to include `counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts andall other districts in this state.' (Emphasis supplied.)
The Community Mental Health Act, part IV, Ch. 394, F. S., establishes a system of locally administered and controlled community mental health programs and services under the supervision of the Department of Health and Rehabilitative Services. Section 394.66(1), F. S. The community mental health programs established under this chapter are to be integrated with state-operated programs to provide a unified mental health system within the state. Section 394.66(3) and (8), F. S. The district mental health boards have been created to provide coordinated mental health services within the department's service districts or subdistricts as defined in s. 20.19, F. S. (see s. 394.67(1), (10), and (11) and s. 394.69, F. S.), and serve as a direct link between the department and community programs. Cf. Ch. 10E-4.09(2)(a), F.A.C. Members of the boards are appointed by the governing bodies of those counties having jurisdiction in the board district, ss. 394.67(2) and 394.70, F. S., and each board must be duly incorporated within the state as a nonprofit corporation. Section 394.69(5), F. S. Each board is charged with the responsibility of preparing a district mental health plan which reflects the program priorities established by the department and the needs of the district. This plan is to be submitted to the district administrator and to the governing bodies of the counties for review, comment, and approval. See s.394.75, F. S.
Financing of mental health services is based upon a uniform ratio of state government responsibility and local participation. Section 394.66, F. S. See also s. 394.76(4), F. S., providing that the state's share of financial participation is 75 percent of the total operating costs of services and programs specified in s.394.75(3), less nonreimbursable expenditures as provided in s.394.76(7), F. S., federal grants excluding funds earned under Title XX of the Social Security Act, 42 U.S.C.A. s. 1397, and inpatient and third-party payments for services rendered to individual eligible inpatients for which reimbursement has been requested from the state. Counties are also required under s.394.76(9), F. S., to participate in the funding of mental health services within their jurisdiction.
Throughout part IV of Ch. 394, F. S., reference is made to community mental health districts. See e.g., s. 394.66(7), F. S., expressing the intent of the Legislature to `[i]nsure that to the maximum degree feasible, the districts of the Department of Health and Rehabilitative Services are the focal point of all district board activities, including budget submissions, grant applications, contracts, and other arrangements that can be effected at the district level'; s. 394.67(3), F. S., referring to the `district plan' as a `mental health plan adopted by a mental health board and approved by the district administrator and governing bodies in accordance with this part'; s. 394.67(11), F. S., defining `board district' to mean `that area over which a single mental health board has jurisdiction for coordinating mental health programs . . .'; s. 394.69, F. S., stating that mental health boards are to be established to coordinate mental health services within `department service districts or subdivisions . . .'; s. 394.70(1), F. S., providing that the mental health boards shall be appointed by the county commission having jurisdiction in the board district; s. 394.75, providing for the preparation of a district mental health plan by the board, which plan is to include procedures for the coordination of services and inventory of mental health resources within the board district (see s. 394.75(2)(c)5., (d), and (e), F. S.); s. 394.71(2) and (3), F. S., authorizing boards to receive and disburse such funds as are entrusted to them by law or otherwise, as well as to contract for and coordinate and disburse state funds; s. 394.73, F. S., providing that any county within a board district shall have the same power to contract for mental health services as the Department of Health and Rehabilitative Services has under existing statutes, which includes the power to contract with a board district or a mental health board (see s. 394.74, F. S.).
In light of the foregoing statutory provisions it seems evident that the mental health boards could have been intended by the Legislature to serve as the governing bodies of special mental health districts. Cf. Rileigh v. Pinellas County, 200 So.2d 165
(Fla. 1967), in which it was stated that the County Free Public Libraries Act, ss. 150.01-150.08, F. S. (repealed by Ch. 71-14, Laws of Florida), created taxing districts for library purposes to be financed by property tax levies authorized by the act and imposed by the counties.
Moreover, the structure of the mental health district boards is such that they might also be considered to be public-quasi corporations or quasi-public corporations. See Forbes Pioneer Boatline v. Board of Commissioners of Everglades Drainage District, 82 So. 346, 350 (Fla. 1919), in which the court discussed the differences between quasi-public, public, and public-quasi corporations; and then concluded that the Everglades drainage district was a `public-quasi corporation, and as such, a governmental agency of the state for certain definite purposes, having only such authority as is delegated to it my law.' See also
O'Malley v. Florida Insurance Guaranty Association, 257 So.2d 9
(Fla. 1971); and 81A C.J.S. States s. 141, p. 583. In particular, in AGO 077-97, this office expressly stated that district mental health boards appeared to qualify as quasi-public organizations; `they are nonprofit, their services are available to the general public within the board district, and they serve a valid public purpose — mental health.' However, it is unnecessary to determine whether mental health boards should be deemed to be governing bodies of special districts or publc-quasi corporations or quasi-public corporations, since the definition of state agency or subdivision contained in s. 768.28, F. S., is broad enough to encompass such boards, however they are characterized.
Accordingly, I am of the view that district mental health boards may be deemed to be `state agencies' or subdivisions' within the definitional purview of s. 768.28(5), F. S.; therefore, the members of such boards as well as the `board director' and `board staff member(s)' (see s. 394.72, F. S.) are `officer(s), employee(s), or agent(s) of the state or its subdivisions' within the purview of s. 768.28(9), F. S. Cf. AGO 076-202 wherein I concluded that district mental health boards were not subject to the requirements of the State Purchasing Law (part I, Ch. 287, F. S.), since the only agencies encompassed within the definition of state agency for purposes of that law were those agencies assigned to the executive branch of state government.
I have not considered in this opinion the question of whether or not district mental health boards as districts or public-quasi corporations or quasi-public corporations were subject to tort liability prior to the state's waiver of sovereign immunity. See
Suwannee County Hospital Corp. v. Golden, 56 So.2d 911, 913 (Fla. 1952), in which the court noted that a hospital district was not possessed of sovereign immunity because its activities fell `more clearly in the category of `proprietary' functions than `governmental' . . .'; Circuit Court v. Department of Natural Resources, 339 So.2d 1113, 1115 (Fla. 1976), in which the court noted that Suwannee stood for the principle that `a public corporation whose functions are local rather than state-wide does not share in the sovereign immunity of the state'; and AGO's 075-114 and 076-41, concluding that the liability limits contained in s. 768.28, F. S., did not apply to hospital districts and municipalities, respectively, because such entities possessed no sovereign immunity and have been held subject to tort liability. The 1977 Legislature, however, amended s. 768.28(5), F. S., assuming the validity thereof, to provide that the monetary limitations on liability specified therein are applicable to all
state agencies and subdivisions of the state, as defined in s.768.28(2), regardless of whether these agencies and subdivisions possessed sovereign immunity prior to July 1, 1974. See also AGO 078-33, concluding that a municipal housing authority was within the purview of s. 768.28, F. S., and that, in the absence of a judicial determination to the contrary, the monetary limitations on liability contained in s. 768.28(5), F. S., were applicable to such authority; and AGO 078-42 reaching the same conclusion with respect to a hospital district.
AS TO QUESTION 2:
Your second question is answered in the negative.
Section 394.74, F. S., authorizes each district mental health board, subject to certain conditions not relevant here, to contract for state funds on a matching basis in the establishment and operation of local mental health programs `with any hospital, clinic, laboratory, institution, or other appropriate service agency.' (Emphasis supplied.) Thus, it is clear that the board is authorized to contract with private as well as public organizations in providing the services contemplated by part IV of Ch. 394, F. S. See s. 394.67(14), F. S., defining `community mental health facility' as `any facility in which all or any portion of the programs or services set forth in subparagraphs394.75(2)(c)5. and 394.75(2)(e)2. and subsection 394.75(3) are carried out'; and s. 394.74(2)(d)2. requiring the development of standard contract forms for use between district mental health boards and `community mental health service providers.' In addition, the district mental health plan required by s. 394.75, F. S., is to provide, inter alia, a plan `[f]or the most appropriate and economical use of all existing public and private
agencies and personnel' (s. 394.75(2)(c)3., also see s.394.75(2)(c)4.), as well as `[a]n inventory of all public and private mental health resources within the board district.' (Section 394.75(2)(c)5.; emphasis supplied.) See also Rule 10E-4.10(1)(a), F.A.C., defining Community Mental Health Clinic as `[a]ny organization which is not a comprehensive community health center that provides direct and indirect mental health services in accordance with the standards established by the Department and receives state grant and aid funds . . . .' It should be noted that this question is confined to a discussion of private or nonpublic service providers. Thus, any public institutions or service providers which are otherwise within the purview of s. 768.28, F. S., are not affected by this opinion.
Accordingly, it is evident that the district mental health boards are authorized to contract with private as well as public community mental health providers in the rendition of those services contemplated by Ch. 394, F. S. However, I find no provision in either the statutes or in relevant rules of the Department of Health and Rehabilitative Services which would categorize private community mental health clinics or other private service providers as `corporations primarily acting as instrumentalities or agencies of the state, counties or municipalities.' As you note in your letter, with regard to mental health clinics:
 Such clinics are free to service private clients who fees are not paid through the Mental Health Boards and have substantial independence as to the form of psychiatric treatment given to all clients, including those whose fees are paid through the District Boards.
The primary characteristic of a public or quasi-public corporation is its creation by law. See 81A C.J.S. States s. 141, noting that in the absence of constitutional prohibition a state may create an agency for the purpose of carrying out a state duty or function; and 81A C.J.S. States s. 141, p. 585, stating that the powers of a public agency or corporation are limited to those conferred by statute. See also O'Malley v. Florida Insurance Guaranty Association, supra, in which the Florida Supreme Court, discussing public or quasi-public corporations, stated:
 Their business ordinarily is stipulated by the Legislature to fill a public need without private profit to any organizers or stockholders. Their function is to promote the public welfare and often they implement governmental regulations within the state's police power. In a word, they are organized for the benefit of the public. [O'Malley v. Florida Insurance Guaranty Association, 257 So.2d 9 (Fla. 1971); emphasis supplied.]
Compare Florida Power Corporation v. Pinellas Utility Board,40 So.2d 350, 355 (Fla. 1949), in which the court held that the power of the Legislature to regulate public utility rates (tolls for passage over a causeway) may be exercised directly by the Legislature or through some instrumentality thereof, or by a board or a commission created for that purpose, or the power may be conferred by the Legislature on the courts or some other existing board or functionary; and, see also Florida Gulf Health Systems Agency v. Commission on Ethics, 354 So.2d 932 (2 D.C.A. Fla., 1978), in which the court ruled that the financial disclosure law was not applicable to members of the governing body of a health systems agency:
 Neither stockholders, directors, nor officers of a private corporation can be termed `local officers' under this statute since they are neither `appointed' nor `elected' as contemplated by the financial disclosure law. Members of a private corporation accede to their positions as to members of any private business, that is by agreement among themselves without regard to the public generally.
Therefore, the mere fact that a private community mental health clinic or other private service provider may have entered into a contractual relationship with the district mental health board to provide certain mental health services does not bring such a private corporation (or its officers and employees) within the definitional purview of s. 768.28, F.S. It follows then that the statutory monetary limitations on tort liability established and fixed by s. 768.28(5), F. S., would not be applicable to such service providers or subcontractors or their officers and employees.
Prepared by: Patricia R. Gleason, Assistant Attorney General