T. Terrell Sessums General Counsel Tampa Port Authority Tampa
QUESTIONS:
1. Is the Tampa Port Authority a `state agency or subdivision' for the purposes of and within the scope of s. 768.28, F. S.?
2. If the answer to question 1 is in the affirmative, what is the extent of the liability of the authority and its insurer if a judgment is obtained against the authority in a tort action which is in excess of the monetary limitations contained in s.768.28(5), F. S.?
SUMMARY:
The Tampa Port Authority is within the definitional purview and enacting terms of s. 768.28, F. S., for the purposes of that statute. Therefore, in the absence of contrary judicial determination, the statutorily established monetary limitations on tort liability established by s. 768.28(5), F. S., are applicable to the port authority, even though it may not have possessed sovereign immunity prior to July 1, 1974. Under s. 768.28(5), F. S. (assuming the validity thereof), the port authority is not liable for that portion of a judgment or judgments obtained against it which is in excess of the monetary limitations set forth therein unless the Legislature takes further action to authorize and require the payment of the whole or a part thereof. Unless judicially determined otherwise, the authority is empowered to secure liability insurance coverage which exceeds the monetary limitations specified in s. 768.28(5), F. S. Should the Legislature act to approve or direct payment of that portion of a claim, judgment, or claims bill which is in excess of the statutory limitations, then the insurer would be potentially liable to pay the amount of the excess, up to the limits of the policy.
AS TO QUESTION 1:
Your first question is answered in the affirmative.
With the enactment of s. 768.28, F. S. (Ch. 73-313, Laws of Florida, as amended by Chs. 74-235 and 77-86, Laws of Florida), the state has waived sovereign immunity for liability for torts for the state `and for its agencies or subdivisions,' to the extent specified therein. Section 768.28(1), F. S. This waiver of immunity for the state and its agencies or subdivisions is limited to $50,000 on any claim or judgment by one person or $100,000 for all claims arising out of the same incident, or occurrence. Section 768.28(5), F. S.
The phrase `state agencies or subdivisions,' as used in s. 768.28, F. S., is defined by subsection (2) to include, inter alia, `. . . corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities.' My examination of the enabling legislation creating the Tampa Port Authority reveals that the authority is within the purview of this definition. Section 4 of Ch. 23338, 1945, Laws of Florida, as amended by Chs.63-1398 and 67-1500, Laws of Florida, states:
 . . . [s]aid Authority shall constitute a body politic and a body corporate; it shall have perpetual existence; its operation shall be deemed to be a governmental function . . . .
Under s. 7 of Ch. 23338, as amended by Chs. 57-1380, 67-1482, 67-1488, 67-1505, 69-1140, 69-1141, 72-566, 72-567, and 76-385, the authority has been vested with all of the powers `necessary to carry out the provisions of this Act . . .' including inter alia, the power of eminent domain, as well as the power to borrow money, acquire property, enter into contracts, and construct and operate projects. The authority is authorized to finance the costs of its projects by the issuance of revenue bonds. Section 14, Ch. 23338, Laws of Florida. In addition, the Board of County Commissioners of Hillsborough County is authorized to levy and collect an ad valorem tax on property in the port district to defray administrative expenses. Section 10, Ch. 23338, Laws of Florida, as amended by Chs. 75-387 and 77-568, Laws of Florida.
From the foregoing it is evident that the Tampa Port Authority may be characterized as a public corporation or public quasi-corporation and hence a `state agency or subdivision' within the statutory definition for purposes of and within the scope of s. 768.28, F. S. See Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage Dist., 82 So. 346, 350 (Fla. 1919); O'Malley v. Florida Insurance Guaranty Association,257 So.2d 9, 11 (Fla. 1971); 81A C.J.S. States s. 141. Recent Attorney General Opinions have held that a corporate municipal housing authority (AGO 078-33), a quasi-corporate hospital taxing district (AGO's 078-42 and 075-114), and a corporate district mental health board (AGO 078-106) are within the definitional purview and enacting terms of s. 768.28, F. S.
As to the question of whether the Tampa Port Authority was ever possessed of sovereign immunity, my research discloses no Florida cases which have considered the matter. It is clear that prior to the state's waiver of immunity, state agencies and political subdivisions partook of the state's sovereign immunity and were not subject to tort liability. See, e.g., Circuit Court of the Twelfth Judicial Circuit v. Department of Natural Resources,339 So.2d 1113 (Fla. 1976); Kaulakis v. Boyd, 138 So.2d 505 (Fla. 1962); Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968). The state's immunity from suit has also been held to extend to a drainage district established pursuant to law. Seaboard Air Line R. Co. v. Sarasota-Fruitville Drainage Dist., 255 F.2d 622 (5th Cir.), cert.denied, 358 U.S. 836 (1958). But in Suwannee County Hospital Corporation v. Golden, 56 So.2d 911 (Fla. 1952), the court stated that the activities of a legislatively established corporate hospital district fell more within the category of proprietary than governmental functions as to those patients who paid for treatment. The Suwannee court ruled that those patients who paid for the services they received were entitled to expect that the services would be rendered free of negligence; such patients could not be divested of their constitutional rights of redress of wrongs by an attempted (special) legislative immunization. In AGO 078-33, moreover, this office found that a majority of other jurisdictions supported the view that a municipal housing authority's activities were proprietary rather than governmental; therefore it was not possessed of sovereign immunity and was subject to tort liability. As to port authorities, moreover, it has been held in other states that the activities of a port authority should be labeled proprietary with resultant tort liability. 3A Antieau Local Government Law s. 301.05; cf. General Petroleum Corp. v. City of Los Angeles, 109 P.2d 754 (2 D.C.A. Cal., 1941); Harris v. Bremerton, 147 P. 638 (Wash. 1915). However, a port authority has also been held to be an arm of the state and hence possessed of sovereign immunity. Fouchaux v. Board of Commissioners of Port of New Orleans, 186 So. 103 (Ct.App. La.), aff'd, 190 So. 373 (La. 1939), cert. denied, 308 U.S. 554
(1939).
However, in light of recent amendments to s. 768.28(5), F. S., made by Ch. 77-86, Laws of Florida (assuming the validity thereof), it is unnecessary to determine whether the Tampa Port Authority possesses or in the past has possessed sovereign immunity. Section 768.28(5), as amended by Ch. 77-86, states that the liability limits contained therein are applicable to all state agencies and subdivisions of the state, as defined in s.768.28(2), regardless of whether these agencies and subdivisions possessed sovereign immunity prior to July 1, 1974. In other words, pending a judicial determination to the contrary, the tort liability of the Tampa Port Authority does not exceed the prescribed statutory limits, notwithstanding the fact that it may not have possessed sovereign immunity prior to the Legislature's waiver of same with respect to tort liability. However, a judgment or judgments may be claimed and rendered in excess of the specified monetary limitations and may be settled and paid up to the prescribed limits and that portion thereof that exceeds such limits may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. Section768.28(5), F. S.
AS TO QUESTION 2:
As previously noted s. 768.28, F. S., operates to waive sovereign immunity for liability for torts for the state `and for its agencies and subdivisions' to the extent specified in the statute, subject to the monetary limitations set forth in s. 768.28(5), F. S. Section 768.28(5), F.S., reads in relevant part:
 . . . . Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $50,000 or any claim or judgment, or portions thereof, which when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $100,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $50,000 or $100,000, as the case may be, and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. (Emphasis supplied.)
From an examination of the subject statute, it is evident that a judgment or judgments or that part thereof which is obtained against the state or its agencies and subdivisions that is in excess of the statutory limits on liability may be paid in part or in whole only if specifically authorized and directed by the Legislature. Should the Legislature refuse to act to approve and require payment of the excess, then the state's agencies or subdivisions may not pay and are not liable for any amounts in excess of the prescribed monetary limits set forth in s.768.28(5), F. S. Attorney General Opinions 075-69 and 075-284.
However, with regard to the extent of the liability of the insurer
of a governmental body, s. 768.28, F. S., does not provide a clear and definitive answer. Formerly, the question could be answered by reference to s. 768.28(10), F. S. 1975, which provided in part:
 If the state or its agency or subdivision is insured against liability for damages for any negligent or wrongful act, omission, or occurrence for which action may be brought pursuant to this section, then the limitations of this act shall not apply to actions brought to recover damages therefor to the extent such policy of insurance shall provide coverage. (Emphasis supplied.)
See also Circuit Court v. Department of Natural Resources,339 So.2d 1113, 1116 (Fla. 1976), wherein the Supreme Court stated:
 Section 768.28, Florida Statutes, constitutes a limited waiver of the state's sovereign immunity . . . . Such waiver is coextensive with insurance coverage obtained by the agency involved. (Emphasis supplied.)
In 1977, the Legislature enacted Ch. 77-86, Laws of Florida, which repealed s. 768.28(10), F. S. 1975. Thus it is evident that s.768.28, F. S., no longer specifically provides an exception from the operation of that section, or for a waiver of sovereign immunity `coextensive with the insurance coverage obtained by the agency involved.' However, s. 3 of Ch. 77-86, supra, added a new subsection to s. 768.28, F. S., which subsection has been codified as s. 768.28(13), F. S. Section 768.28(13), F. S., authorizes the state or its agencies and subdivisions to, inter alia, `purchase liability insurance for whatever coverage they may choose . . . in anticipation of any claim, judgment, and claims bill which theymay be liable to pay pursuant to this section.' (Emphasis supplied.) Section 768.28(5), F. S., provides that the portion of a judgment or judgments that exceeds the monetary limitations specified therein may be reported to the Legislature, and `may be paid in part or in whole' by `further act' of that body. Hence, the italicized language of s. 768.28(13) appears to embrace any
claim, judgment, or claims bill the payments of which may be approved or directed by the Legislature, notwithstanding the monetary limitations prescribed by s. 768.28(5), F. S.
Further, existent s. 768.28(10), F. S., provides that `[l]aws allowing the state or its agencies to buy insurance are still in force and effect and are not restricted in any way by the terms ofthis act.' (Emphasis supplied.) Therefore, existent s. 768.28(10) and (13), F. S., may not be said to have in any way impliedly modified or repealed any provision of any other law allowing state agencies or subdivisions to buy insurance. In this regard, s. 455.06(1), F. S., authorizes `[t]he public officers in charge or governing bodies . . . of every . . . governmental unit, department, board or bureau of the state, including tax or other districts, political subdivisions, and public and quasi-public corporations' to secure insurance to cover liability for damages on account of personal injury or death or damage to the property of any persons resulting from the performance of various enumerated functions and activities by the governmental entity or its agents and employees acting within the scope of their employment. Section 455.06(1), F. S., also authorizes the governing bodies of the governmental units specified therein to pay the premiums for such insurance from any general funds appropriated or made available for necessary and regular operating expenses of the governmental entity. It is clear that the Tampa Port Authority is a `political subdivision' or `public corporation' within the purview of the above-quoted statute; therefore, the authority would be empowered to secure liability insurance coverage for the purposes set forth therein. Moreover, s. 455.06(2), F. S., provides in part that
 . . . the immunity of said political subdivision against any liability described in subsection (1) as to which insurance coverage has been provided and suit in connection therewith, are waived to the extent and only to the extent of such insurance coverage. . . .
Section 455.06, supra, does not limit or in any way restrict theamount of insurance coverage which may be carried by a governmental agency for the purposes set forth therein, nor has it been impliedly modified or repealed in this respect by existent subsections (10) and (13) of s. 768.28, F. S.
Accordingly, until judicially determined otherwise, I am of the view that the Tampa Port Authority is authorized to secure insurance coverage which exceeds the monetary limitations specified in s. 768.28(5), F. S. And, should the Legislature act to approve or direct payment of that portion of a claim, judgment, or claims bill which is in excess of the statutory limitations, then the insurer would be potentially liable to pay the amount of the excess, up to the limits of the policy.
Prepared by: Patricia R. Gleason, Assistant Attorney General