The Honorable Tom Gallagher State Treasurer and Insurance Commissioner The Capitol Tallahassee, Florida 32399-0300
Dear Commissioner Gallagher:
You ask the following question:
Are funds derived from the premiums, assessments, investment income, and other revenue of the Citizens Property Insurance Corporation, proposed by Committee Substitute for Senate Bill 1418, included within the term "state revenues" for purposes of Article VII, section 1(e), Florida Constitution?
In sum:
Funds derived from the premiums, assessments, investment income, and other revenue of the Citizens Property Insurance Corporation, proposed by Committee Substitute for Senate Bill 1418, are not included within the term "state revenues" for purposes of Article VII, section 1(e), Florida Constitution.
Article VII, section 1(e), adopted by ballot initiative during the November 1994 general election, provides in pertinent part:
"Except as provided herein, state revenues collected for any fiscal year shall be limited to state revenues allowed under this subsection for the prior fiscal year plus an adjustment for growth. As used in this subsection, "growth" means an amount equal to the average annual rate of growth in Florida personal income over the most recent twenty quarters times the state revenues allowed under this subsection for the prior fiscal year. . . . State revenues collected for any fiscal year in excess of this limitation shall be transferred to the budget stabilization fund until the fund reaches the maximum balance specified in Section 19(g) of Article III, and thereafter shall be refunded to taxpayers as provided by general law. . . . For purposes of this subsection, "state revenues" means taxes, fees, licenses, and charges for services imposed by the legislature on individuals, businesses, or agencies outside state government. . . ."
The Constitution sets forth several specific exceptions to "state revenues."[1] The premiums, assessments, investment income, and other revenue of the Citizens Property Insurance Corporation, proposed by Committee Substitute for Senate Bill 1418 (CS/SB 1418), however, do not appear to fall within any of the enumerated exceptions.
Under the current statutory system, there are two state-created associations that provide property insurance for those unable to obtain coverage from an authorized insurance company: the Florida Windstorm Underwriting Association (FWUA) and the Florida Residential Property and Casualty Joint Underwriting Association (JUA). The FWUA provides coverage for windstorm and hail damage in specified coastal areas. The JUA provides full homeowners' insurance and similar coverages statewide with certain exceptions. These associations make up what is known as the "residual" market for property insurance in Florida.
Resources for the payment of claims under these associations include a combination of premiums paid by the policyholders, recoveries from the Florida Hurricane Catastrophe Fund after major hurricanes, and assessments levied against property insurance companies and their policyholders statewide. Both associations also are authorized to borrow money by issuing revenue bonds backed by these assessments when other resources are not sufficient to pay claims.
These two residual market associations are restructured by CS/SB 1418, which renames the JUA, provides that all JUA policies, obligations, and liabilities belong to the corporation, and transfers all FWUA policies, obligations, and liabilities to the corporation effective July 1, 2002. The corporation was structured to meet the requirements of the Internal Revenue Service so that its income would be exempt from federal income taxation and its bonds would be tax-free.[2]
A question has been raised, however, as to whether the revenues of the corporation constitute "state revenues" for purposes of the limitation on state revenues imposed by Article VII, section 1(e), Florida Constitution.
The Florida Supreme Court in Advisory Opinion to the Governor StateRevenue Cap,[3] previously considered whether the JUA revenues, which included assessments, policy premiums, and policy surcharges, were "state revenues" for purposes of Article VII, section 1(e), Florida Constitution. The Court noted that although the JUA was created by state statute, its function was to provide insurance to private individuals who might not otherwise be able to obtain insurance in the voluntary market. While Article IV, section 4(c) of the Florida Constitution requires that the Treasurer keep all state funds, the assessments, policy premiums, and surcharges collected by the JUA were not deposited or invested in the State Treasury, and were not subject to the planning and budgetary requirements of Chapter 216, Florida Statutes. The Court was advised that funds collected by the JUA were not included in the legislative staff analysis and working papers used to support the legislative process that ultimately led to the placement of the revenue cap amendment on the 1994 general election ballot. In addition, the Court was informed that neither the Comptroller nor the Revenue Estimating Committee considered the revenue collected by the JUA to be subject to Article VII, section 1(e).
In reaching its conclusion, the Court in Advisory Opinion to the GovernorRevenue Cap relied on an earlier decision which determined that assessments collected by an insurance guaranty association were not state tax revenue or general funds, and were not subject to the constitutional prohibitions on the treatment and usage of tax revenues and general funds.[4] In that case, the Court held that funds collected by the Florida Insurance Guaranty Association to pay insurance claims made against insolvent insurers "[were] not in the class of state tax revenue or general funds and [did] not come within the ambit of the constitutional provisions that govern the deposit and disbursement of state tax or general revenue funds."[5]
The Court in the advisory opinion to the Governor considered the fact that the assessments, premiums, and policy surcharges collected by the JUA were treated in a significantly different fashion than the monies collected by the State through its agencies, boards, and commissions to provide support for its conclusion that the monies collected by the JUA were not "state revenues." While section 627.351(6)(j), Florida Statutes, provides that for purposes of section 199.183(1), Florida Statutes, the JUA is considered a political subdivision of the State, the Court noted that this provision was included in order to exempt the JUA from intangible taxes and did not reflect a legislative intent that the JUA should be considered a political subdivision of the State for any other purpose.
The Court stated that Article VII, section 1(e), Florida Constitution, was intended to curb the growth of government spending by limiting the amount of taxes and other revenues the State can collect each year. However, it acknowledged that the JUA was not performing a traditional governmental function. Its revenues were not subject to legislative appropriation and were held solely for the purpose of satisfying insurance claims. Though created by the Legislature, in practical effect the JUA operated like a private insurance company. Thus, the Court concluded it was evident that the monies collected by the JUA were not the type of revenues contemplated by Article VII, section 1(e). Thus, the Court inAdvisory Opinion to the Governor Revenue Cap held that the assessments, premiums, and policy surcharges imposed by the JUA's Board of Governors, collected pursuant to section 627.351(6), Florida Statutes, were not "state revenues" within the meaning of Article VII, section 1(e) of the Florida Constitution.
As noted above, CS/SB 1418 renames the JUA as the Citizens Property Insurance Corporation. While the legislation removes language which states that this entity is not a state agency and restructures the association as a corporation with its governing board appointed by the Treasurer,[6] much of the purpose and function of the corporation is the same as that of the JUA. Under the proposed legislation, the corporation would not perform a traditional governmental function. Its revenues would not be subject to legislative appropriation and would be held solely for the purpose of satisfying insurance claims. Though created by the Legislature, in practical effect the corporation would operate like a private insurance company.
The proposed legislation clearly evinces a legislative intent that the revenues of the corporation should not be considered "state revenues" for purposes of Article VII, section 1(e), Florida Constitution.[7]
Further, you have advised this office that it is the position of the Department of Insurance that revenues received by the corporation would not fall within the limitations of Article VII, section 1(e). You have also informed this office that the Revenue Estimating Committee is in agreement with this position.
Accordingly, I am of the view that funds derived from the premiums, assessments, investment income, and other revenue of the Citizens Property Insurance Corporation, proposed by Committee Substitute for Senate Bill 1418, are not included within the term "state revenues" for purposes of Article VII, section 1(e), Florida Constitution.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tzg
[1] Article VII, s. 1(e), Fla. Const., provides that "state revenues" do not include: revenues that are necessary to meet the requirements set forth in documents authorizing the issuance of bonds by the state; revenues that are used to provide matching funds for the federal Medicaid program with the exception of the revenues used to support the Public Medical Assistance Trust Fund or its successor program and with the exception of state matching funds used to fund elective expansions made after July 1, 1994; proceeds from the state lottery returned as prizes; receipts of the Florida Hurricane Catastrophe Fund; balances carried forward from prior fiscal years; taxes, licenses, fees, and charges for services imposed by local, regional, or school district governing bodies; or revenue from taxes, licenses, fees, and charges for services required to be imposed by any amendment or revision to this constitution after July 1, 1994.
While this office notes that there is an express exemption for the Florida Hurricane Catastrophe Fund from the definition of "state revenues," the fund is created as a state trust fund under the direction and control of the State Board of Administration and, therefore, an express exemption was required.
[2] See, Senate Staff Analysis and Economic Impact on CS/SB 1418, dated February 25, 2002. This office has been informed that on February 20, 2002, the Department of Insurance received a "private letter ruling" from the Internal Revenue Service stating that the corporation, as established by CS/SB 1418 would be tax exempt and able to issue tax-free bonds.
[3] 658 So.2d 77 (Fla. 1995).
[4] See, O'Malley v. Florida Insurance Guaranty Association, 257 So.2d 9
(Fla. 1971).
[5] Id. at 12.
[6] Committee Substitute for House Bill 1361, which is similar to CS/SB 1418, requires that the board members appointed by the Treasurer be confirmed by three members of the Cabinet as provided in Art. IV, s. 6, Fla. Const. Currently, appointments to the JUA are not subject to confirmation. A recent federal court decision held that the governing board of the JUA is selected by the Insurance Commissioner and that he or she effectively controls it. See, Florida Residential Property andCasualty Joint Underwriting Association v. United States of America, Case No. 4:00cv351/RV (N.D.Fla., February 7, 2002). The requirement of confirmation by three members of the Cabinet would add another indicia of a state agency to the corporation.
[7] See, CS/SB 1418 amending s. 627.351(6)(j), Fla. Stat., stating in part that "[t]he premiums, assessments, investment income, and other revenue of the corporation . . . shall not be considered taxes, fees, licenses, or charges for services imposed by the Legislature on individuals, businesses, or agencies outside state government.