Mr. Joel Rosen Chair, Child Care Executive Partnership Program 2807 Remington Green Circle Tallahassee, Florida 32308
Dear Mr. Rosen:
On behalf of the Board of the Child Care Executive Partnership Program, you ask substantially the following questions:
1. Is the Child Care Executive Partnership a public, quasi-public or private corporation?
2. If the Child Care Executive Partnership is a quasi-public or public corporation, is it required to incorporate under Chapter 607 or Chapter 617, Florida Statutes?
3. What type of organizational documents may the Child Care Executive Partnership adopt?
Question One
Section 409.178(3), Florida Statutes, creates the Child Care Executive Partnership as "a body politic and corporate" to establish and govern the Child Care Executive Partnership Program. The purpose of the program is to utilize state and federal funds as incentives for matching local funds derived from local governments, employers, charitable foundations, and other sources, so that Florida communities may create local flexible partnerships with employers to provide assistance to employees in obtaining quality child care.[1]
The courts of this state and this office have recognized the authority of the Legislature to create public corporations. In Forbes Pioneer BoatLine v. Board of Commissioners of Everglades Drainage District,[2] the Florida Supreme Court considered the distinctions between private corporations, quasi-public corporations, public quasi corporations and public corporations, stating:
"A private corporation is one formed for the benefit of its stockholders exclusively. When it is invested with certain powers of a public nature to permit it to discharge duties to the public, it loses its strictly private character and becomes quasi public. A corporation is public when created for public purposes only, connected with the administration of government, and where the whole interests and franchises are the exclusive property and domain of the government itself. . . ."
Public corporations "are subdivided into municipal and public quasi corporations. Municipal corporations embrace incorporated cities, villages, and towns which are full-fledged corporations with all the powers, duties, and liabilities incident to such status, while public quasi corporations possess only a portion of the powers, duties, and liabilities of corporations. As an instance of the latter class may be mentioned counties, townships, overseers of the poor, school districts, and road districts." [citation omitted]
Thus, the Court determined that the Everglades drainage district was a public quasi-corporation, created with all the powers of a body corporate, including the power to sue and be sued, to make contracts and to use a common seal. As such, it was "a governmental agency of the state for certain definite purposes, having such authority only as is delegated to it by law."[3]
Subsequently in O'Malley v. Florida Insurance Guaranty Association,[4]
the Florida Supreme Court considered the nature of the Florida Insurance Guaranty Association, created by statute as a nonprofit corporation. The Court distinguished between private corporations that have no official duties or concern with the affairs of government, are voluntarily organized and are not bound to perform any act solely for government benefit, and public corporations that are organized for the benefit of the public. Concluding that the association was "a legislatively declared `mechanism' to aid and benefit numerous citizens" who had suffered a loss of insurance protection because of the insolvency of their insurers, the Court held that the association was a public or quasi-public corporation.
Similarly, this office in considering the nature of public corporations has stated that the primary characteristic of a public or quasi-public corporation is its creation by law. For example, in Attorney General Opinion 97-42 this office concluded that the Florida Distance Learning Network, created by statute to carry out the provisions of the Education Facilities Infrastructure Improvement Act, appeared to be in the nature of a public corporation or a quasi-public corporation.[5] In Attorney General Opinion 83-20, this office considered the nature of the Florida State Fair Authority, which was created by the Legislature as a public body corporate and politic. Recognizing that absent constitutional restriction a state may create an agency or a public corporation for the purpose of carrying out a state duty or function, and that the agency so created is a class of artificial entities designated as quasi corporations,[6] this office stated the Authority is a public corporation or public quasi corporation for state purposes to carry out a state function.
As noted above, the Child Care Executive Partnership is statutorily "a body politic and corporate" to carry out what the Legislature has considered to be a public purpose. As such, the Child Care Executive Partnership would appear to constitute a public or quasi-public corporation.
Question Two
In light of this office's response to Question One that the Child Care Executive Partnership is a public or public quasi-corporation, you ask whether the partnership must be incorporated under Chapter 607 or Chapter 617, Florida Statutes.
As discussed in Question One, the Legislature has created the Child Care Executive Partnership Act in section 409.178, Florida Statutes, as a body politic and corporate. Thus, the statute itself establishes the partnership as a corporate body. Nothing in the statute requires the partnership to incorporate under either Chapter 607, Florida Statutes, relating to for-profit corporations, or Chapter 617, Florida Statutes, relating to not-for-profit corporations. In contrast, where the Legislature has intended a public or public quasi-corporation to be incorporated, it has clearly so provided.[7]
As stated by the Court in Forbes Pioneer Boat Line v. Board ofCommissioners of Everglades Drainage District, supra,
"Public corporations `are subdivided into municipal and public quasi corporations. Municipal corporations embrace incorporated cities, villages, and towns which are full-fledged corporations with all the powers, duties, and liabilities incident to such status, while public quasi corporations possess only a portion of the powers, duties, and liabilities of corporations.'"[8]
Accordingly, I am of the opinion that the Child Care Executive Partnership, which has statutorily been created as a body politic and corporate, is not required to be incorporated under either Chapter 607 or Chapter 617, Florida Statutes.
Question Three
You inquire about the authority of the Child Care Executive Partnership to adopt organizational documents regarding its governance.
As the Court in Forbes Pioneer Boat Line v. Board of Commissioners ofEverglades Drainage District, supra, recognized, the powers of a public quasi corporation are generally limited to those conferred by statute.[9]
The statute, however, designates the partnership as a body corporate and recognizes that the partnership may exercise corporate powers, such as the ability to adopt a seal and to contract. While the statute does not specifically refer to the adoption of bylaws, it does provide that the partnership possesses "all the powers and authority, not explicitly prohibited by statute, necessary to carry out and effectuate the purposes of this section, as well as the functions, duties, and responsibilities of the partnership, including, but not limited to, the following . . . ."[10]
Moreover, while section 409.178, Florida Statutes, sets forth the duties, composition and staffing of the partnership, many of the issues regarding its procedures are not prescribed. When the law imposes a duty or power on an officer or board, unaccompanied by definite directions as to how the power is to be exercised, it also confers by implication such powers as are necessary for the due and efficient exercise of those powers expressly granted.[11] In light of the above, I am of the opinion that the Child Care Executive Partnership may adopt procedures or "bylaws" regarding the operation and governance of the partnership that are not inconsistent with state law.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See, s. 409.178(3), Fla. Stat., setting forth the legislative intent.
[2] 82 So. 346, 350 (Fla. 1919).
[3] Id. And see, State ex rel. Burbridge v. St. John, 197 So. 131, 134
(Fla. 1940), in which the Supreme Court discussed the nature of a municipal housing authority created pursuant to Ch. 421, Fla. Stat.:
"Thus there is created in substance and effect a real corporation, a separate and distinct corporate entity from that of the municipality, having power to contract with the municipality, and furthermore, a corporation which is not a municipality, its prime purposes being the construction and renting of dwellings or housing accommodations to tenants of a low income group for a reasonable rental price, in competition with private citizens."
[4] 257 So.2d 9 (Fla. 1971).
[5] And see, Ops. Att'y Gen. Fla. 77-92 (1977) (county housing authority, created by statute as a public body corporate and politic, is a public or public quasi corporation); 01-26 (2001) (Florida Commercial Space Financing Corporation is in the nature of a public or quasi-public corporation). And see, Black's Law Dictionary Corporation, pp. 409-410 (rev. 4th ed. 1968) ("A public corporation is one created by the state for political purposes and to act as an agency in the administration of civil government. . . . [A corporation, however, if] organized by private persons for their own advantage, or even if organized for the benefit of the public generally, . . . is none the less a private corporation"); 18 C.J.S. Corporations s. 6a (generally, public corporations are created by the people or government for political or governmental purposes, whereas private corporations are formed by voluntary agreement of their members for private, or in some instances, for public purposes").
[6] See, 81A C.J.S. States s. 141.
[7] See, e.g., s. 445.004(1), Fla. Stat., which creates Workforce Florida, Inc., as "a not-for-profit corporation . . . which shall be registered, incorporated, organized, and operated in compliance with chapter 617"; s. 288.1226(2), Fla. Stat., requiring the Florida Commission on Tourism to establish the Florida Tourism Industry Marketing Corporation as a direct-support organization which is a corporation not-for-profit incorporated under the provisions of chapter 617 and approved by the Department of State; s. 288.773, Fla. Stat., creating the Florida Export Finance Corporation as a corporation not-for-profit, to be incorporated under the provisions of chapter 617 and approved by the Department of State.
[8] 82 So. at 350.
[9] Id. (drainage district possessed only such authority only as was delegated to it by law). And see, 81A C.J.S. States s. 142.
[10] Section 409.178(4)(d), Fla. Stat.
[11] See, In re Advisory Opinion to the Governor, 60 So.2d 285 (Fla. 1952); State ex rel. Martin v. Michell, 188 So.2d 684, 687 (Fla. 4th DCA 1966), cert. discharged, Martin v. State, 192 So.2d 281 (Fla. 1966);Peters v. Hansen, 157 So.2d 103 (Fla.2d DCA 1963); Ops. Att'y Gen. Fla. 94-80 (1994) and 94-68 (1994) (if the law imposes duty on public officer to accomplish a stated governmental purpose, it also confers by implication every particular power necessary or proper for the complete exercise or performance of that duty which is not in violation of law or public policy).