RAY, J.,
dissenting.
I would affirm the trial court’s decision to uphold the constitutionality of chapter 2011-256 (the “Special Law”). “[W]e are obligated to accord legislative acts a presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever possible.” Fla. Dep’t. of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005). After *679 thoroughly analyzing the arguments and law presented by the parties on cross-motions for summary judgment, the trial court ruled that the Foundation cannot be heard to complain about the impairment of its contracts in violation of article I, section 10 of the Florida Constitution (the “Contracts Clause”), because it is a public or quasi-public corporation.[1] The trial court ruled that the same analysis applies to the claim that the Special Law violates the Foundation’s right to due process by depriving it of vested contractual rights. Guided by the Florida Supreme Court’s decision in O’Malley v. Florida Insurance Guaranty Association, 257 So.2d 9 (Fla.1971), and informed by the Foundation’s history and its own representations about its nature, I agree.
The Hospital Board formed the Foundation as a not-for-profit corporation to carry out the purposes of the special act creating the Hospital Board. At the Foundation’s inception, and when the Hospital Board and Foundation executed the Lease Agreement and Agreement for Hospital Care in 1990, the Hospital Board trustees occupied a majority of the positions on the Foundation’s Board. Since the beginning of the leasing and hospital-care arrangements, the Foundation has carried out its agreement to operate and manage Citrus Memorial Hospital using public funds provided through ad valorem taxing by the Hospital Board. In 2006, the parties amended the Agreement for Hospital Care to make clear that the Foundation’s obligations “are to be considered a transfer of a governmental function from the [Hospital] Board.”
The Foundation has made several declarations to the courts and officials of this state indicating that this transfer defines its very nature and purpose. In 2007, in the context of obtaining sovereign immunity, the Foundation represented to a circuit court that “the Foundation serves no purpose other than to fulfill the Hospital Board’s public function of operating hospitals in Citrus County.” The Foundation advised the same court that it is “an ‘instrumentality’ or ‘agency' of the Hospital Board in the truest sense.” Further, seeking to rebase its Medicaid rates in 2008, the Foundation urged the Florida Agency for Health Care Administration to deem it a public entity. The Foundation cited its entitlement to sovereign immunity, which the Foundation noted “is reserved only for the state and its agencies,” as one factor among many militating in favor of such a finding. Other factors included the Foundation’s fulfillment of the Hospital Board’s public function, the Hospital Board’s ownership of the Foundation, the Foundation’s compliance with Florida’s public records law, and the fact that the Foundation “answers to the Hospital Board regarding key operational, capital[,] and financial decisions.”
Despite the control the Foundation had previously conceded the Hospital Board exercises over its operations, the Legislature determined, in 2011, that greater control was necessary to ensure meaningful oversight and appropriate accountability by the Hospital Board over the Hospital Board’s public responsibilities. This determination is reflected in the Special Law’s “whereas clauses,” which also indicate that the Legislature instituted the accountability measures at issue as a mechanism to protect the public interest.
*680 The trial court ruled that the Special Law does not violate the Contracts Clause because the Foundation is a public or quasi-public corporation. The parties to this appeal have not presented any cases defining the terms “public corporation” or “quasi-public corporation” with respect to the Contracts Clause, and it appears that Florida courts have not previously been called upon to analyze the nature of a corporation for the purpose of applying this provision. The best precedent available on this topic is O’Malley, in which the Florida Supreme Court distinguished between private and public or quasi-public corporations for the purpose of deciding whether a law violated article III, section 11, of the Florida Constitution. Although O’Malley concerned a different constitutional provision, its definitions of private and public corporations are relevant to our determination of the nature of the corporation at issue here.
The O’Malley court explained that “[pjrivate corporations are those which have no official duties or concern with the affairs of government, are voluntarily organized[,j and are not bound to perform any act solely for government benefit, but the primary object of which is the personal emolument of its stockholders.” 257 So.2d at 11. The O’Malley court then defined public corporations by reference to the following considerations:
Their business ordinarily is stipulated by the Legislature to fill a public need without private profit to any organizers or stockholders. Their function is to promote the public welfare and often they implement governmental regulations within the state’s police power. In a word, they are organized for the benefit of the public.

Id.

The Foundation attempts to distinguish O’Malley on the ground that the Legislature directly created the corporation whose status was at issue in that case, through enabling legislation. But whether a corporation is created directly by the State, or by an arm of the State, seems to be a distinction without a difference when, as here, the sole and exclusive purpose of the corporation is to carry out a public function for the benefit of the public. Furthermore, if the manner of a corporation’s creation were dispositive of the public/private inquiry, there would have been no need for the O’Malley court to describe the attributes of public and private corporations for the purpose of determining in which category the corporation in question was to be placed. The court, instead, could have started and ended its analysis by reference to the manner of the corporation’s creation. Because the supreme court did not adopt this approach, the trial court properly resolved this case by reference to the O’Malley factors.
Under the O’Malley definition, the Foundation is a public or quasi-public corporation. It was not voluntarily created by private citizens for their own benefit or for the benefit of any private interests whatsoever. As the Foundation has admitted, the Hospital Board created the Foundation for the purpose of fulfilling the Hospital Board’s public function of providing hospital services in Citrus County, and it still exists for that sole purpose. The Foundation has no shareholders, and the Hospital Board is its only member. As the Hospital Board has aptly described the relationship, the Hospital Board essentially restructured itself when it executed the Lease Agreement and Agreement for Hospital Care. This situation was not one where a special taxing district competitively bid the outsourcing of a public function and entered into “arm’s length” bilateral contract with a private company. Cf. Mem’l Hosp.-W. Volusia, Inc. v. News- *681 Journal Corp., 729 So.2d 373, 377-78 (Fla.1999).
The representations the Foundation has made to the courts and officials of this state are perhaps the best indication of its identity as a public or quasi-public corporation. These statements reveal that the Foundation has no greater interest in self-governance than any other state agency, as it exists only to fulfill the delegated duty to meet Citrus County’s public health needs in accordance with the Legislature’s mandate for the Hospital Board. Like other state agencies and officials, the Foundation should be required to presume the legislation affecting its duties is constitutional and focus on carrying out those duties. See Crossings At Fleming Island Comty. Dev. Dist. v. Echeverri, 991 So.2d 793, 799 (Fla.2008) (quoting Barr v. Watts, 70 So.2d 347, 351 (Fla.1953) (“The state’s business cannot come to a stand-still while the validity of any particular statute is contested by the very board or agency charged with the responsibility of administering it and to whom the people must look for such administration.”); Dep’t of Educ. v. Lewis, 416 So.2d 455, 458 (Fla.1982) (“State officers and agencies must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise.”)). Regardless of the status of other corporations involved in leases under section 155.40, the specific relationship the Foundation has acknowledged it has with the Hospital Board requires a holding that the Foundation is a public entity that cannot be removed from legislative oversight.
The Foundation contends that its prior representations, made for other purposes, should not determine its status as public or private. Citing Prison Rehabilitative Industries and Diversified Enterprises, Inc. v. Betterson, 648 So.2d 778 (Fla. 1st DCA 1994), the Foundation notes that an entity may be a state agency for the purpose of claiming sovereign immunity and not for other purposes. See also Keck v. Eminisor, 104 So.3d 359, 369 (Fla.2012). While the Foundation’s entitlement to sovereign immunity might not be dispositive, the Foundation should nevertheless be held to the factual representations it has made in other contexts. See Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061, 1066 (Fla.2001) (quoting Smith v. Avatar Properties, Inc., 714 So.2d 1103, 1107 (Fla. 5th DCA 1998) (recognizing that, under the doctrine of judicial estoppel, litigants are prohibited from “taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings”)). Those factual representations establish that it has all of the essential elements of a public or quasi-public entity and that the Special Law does not affect any private interest.
In my view, the definition in O’Malley and the Foundation’s prior representations resolve this case. Because the Foundation’s true nature is that of a public or quasi-public corporation, I find no cognizable claim under the Contracts Clause. The Foundation’s “due process” claim hinges on a deprivation of the same contract rights at issue in its claim under the Contracts Clause. Therefore, this related claim should fail for the same reasons.

. The trial court ruled, in the alternative, that the Special Law would not unconstitutionally impair the Foundation’s contracts even if the Foundation were a private corporation. Because I agree with the trial court on the threshold issue concerning the Foundation’s nature as a public entity, I express no opinion on the impairment question.