MARION MORTGAGE COMPANY, a Florida Corporation, *Plaintiff in Error*, vs. STATE OF FLORIDA, ex rel. FRED H. DAVIS, Attorney General, *Defendant in Error*.

145 So. 222.

Opinion filed December 29, 1932.

*Mitchell D. Price, John L. Neeley, Stapp, Gourley, Vining & Ward,* and *Redfearn & Ferrell,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General and *Burdine, Terry & Fleming,* for Defendant in Error.

BULLOCK, Circuit Judge.—The parties to this cause will be hereinafter designated plaintiff and defendant, as in the lower court.

March 12, 1929, the plaintiff filed a quo warranto information in the Circuit Court of the Eleventh Judicial Circuit of Florida, against the defendant requiring it to answer by what warrant or authority it was acting as trustee under a mortgage or deed of trust, bearing date March 15, 1924, encumbering the El Commodora Hotel property, and securing a bond issue of $485,000., charging that defendant is exercising the office of trustee under said deed of trust and is enjoying the emoluments, profits and benefits of a trust company, notwithstanding the same is in violation of the statutes of the State of Florida.

It is alleged that defendant was incorporated under the name of G. L. Miller Bond and Mortgage Company, and its name was afterwards changed to that of the defendant. Further, that the letters patent show the powers and privileges granted to defendant to be as follows: "It shall have full power and authority to act as trustee in deeds of trust or mortgages upon real estate or personal property, or both, executed for the purpose of securing the payment of any indebtedness," and other powers mentioned.

That notwithstanding the provisions of the laws of Florida, the defendant caused itself to be named as trustee in that certain deed of trust referred to and made a part of the information, and charged that defendant is exercising trust functions and enjoying the emoluments, profits,

and benefits of a trust company without complying with the statute for the organization of trust companies.

To this petition, or information, the defendant demurred, the demurrer was overruled, and this ruling constitutes the first assignment of error.

The defendant answered, to which the plaintiff demurred, and moved for a writ of ouster, and to strike the 11th paragraph of the answer.

November 12, 1929, the court overruled the demurrer to the answer, denied the motion for ouster, and granted the motion to strike the 11th paragraph of the answer, which order constitutes the second assignment of error.

Thereafter a stipulation of counsel was entered into waiving a trial by jury, and submitting the matter to the court on stipulation of facts. On the third day of April, 1930, the Circuit Court entered a final judgment of ouster, and defendant prosecuted writ of error.

The overruling of the defendant's demurrer to the plaintiff's information is the predicate for the first assignment of error.

In discussing the first assignment of error, a counsel for defendant urge that the charter of the defendant is a contract between the State and defendant, which contract cannot be *impaired* by the Legislature, or the courts; to which we assent.

Defendant invokes Section 10, Article 1 of the Constitution of the United States, arguing that a charter is a contract between the State and the corporation; that it cannot be impaired by legislative enactment or by the courts, and lay much emphasis on the celebrated Dartmouth College case, reported in case of Trustees of Dartmouth College vs. Woodward 4 Wheat. 518, 4 L. Ed. 629, and urge the concurring opinion of this Court in the case of State ex rel. Triay vs. Burr, 79 Fla. 290, 84 So. 61, with adjudicated cases, and text-writers approving the case.

Is the Dartmouth College case in point? In that case the charter provided for the election of designated officers, and the Legislature of New Hampshire undertook to *change* the charter in this respect. No substitution or *change* of power is sought in the case at bar. The concurring opinion of Chief Justice Browne in the Burr case, supra, is urged. This concurring opinion is in perfect harmony with the opinion of the Court written by Justice Whitfield, for it is noted that the first expression in the concurring opinion is, "I concur fully . . . . . . except in so far as it might be construed as recognizing any right of the State under the doctrine of the police power to impair the obligation of the contract between the city and the Traction Company." A mere precautionary statement to the effect that *if* there is anything found in that opinion that "might be construed" as recognizing such right in the State, he did not mean to approve it. When he said, "I concur fully" it is apparent from the other expressions that he was placing safeguards against an ingenious construction of the opinion, as is perhaps done in this instance.

The proposition of law discussed under the first assignment of error to the effect that a charter is a contract, and the law in force at the time enters into it, is a sound proposition of law that has been recognized in Florida for many years. County Commissioners of Columbia County vs. King 13 Fla. 451.

We have not been furnished, nor are we able to find, any authority to sustain the position that where a statute designates persons to perform a ministerial act (in this case to grant a charter to the applicant to do certain specified acts when the applicant has complied with the statute) that such charter can constitute any defense to the performance of unauthorized acts, although such authority is written in the charter.

The gravamen of the State's position is that those of-

ficers who have been designated by the State to perform a ministerial duty—to grant in its behalf a charter that the law authorizes—have exceeded their power and their act is ultra vires, for the reason that included in the charter is the power or authority for the corporation to act as a trustee, without complying with the law, and the charter constitutes no justification or answer.

Indeed, the learned counsel for the defendant assert the same principle of law, for in their brief manifesting much skill and labor, they say, ''We recognize the fact that the charter of a corporation like that of the Marion Mortgage Company, formed under the general law, consists of the articles of incorporation, taken in connection with the law under which the organization took place. The provisions of law enter into and form a part of the charter, and therefore such corporation cannot clothe itself with a power merely by naming it in its articles of incorporation. The general law, as well as the articles of incorporation, must determine whether the particular power exists or not.''

To this we fully subscribe, but we cannot agree to the further contention of defendant, as we understand it, that although the word ''trust'' is not a part of the name of the corporation, as required by the Act of 1911, defendant may exercise trust functions, for the reason that the exercise of such functions are incident to its business.

Defendant further insists that the general laws of this State at the date of its charter are not in conflict with the powers granted in its charter, and that subsequent acts of the Legislature in 1921 and 1923 could not impair its charter right.

The plain prohibition of the Act of 1911 that ''no trust company shall have power'' to exercise the functions mentioned, cannot be evaded by incorporating under the general incorporation law, and then contend that the law does not apply for the reason that it is not a trust company.

The Act says, "No corporation hereafter organized shall exercise within this State," etc.

If defendant's contention is sound reasoning, then any corporation of this State can act as trustee and avoid the commands of the statute, and the statute becomes "as sounding brass or a tinkling cymbal." Defendant contends that the prohibition should not apply to the details but to the *pursuit of business* of a trust company; that incidentally, or incident to the exercise of its other corporate powers, it may also exercise a trust function, with all of its rights, privileges, and emoluments. Such distinction is too refined, and we cannot adopt it. A further consideration of the police powers will be made under other assignments of error.

The basis of the second assignment of error is that the court errer in striking paragraph 11 of the defendant's answer.

We find from the agreed statement of facts, as well as from the pleading, that on October 18, 1920, the State of Florida granted to defendant (or its predecessor) through its governor and secretary of state (who are its officers designated by law to issue letters patent to corporations under statutory regulations) letters patent, with a capital of $250,000. and granted it authority to do and perform the matters and things therein stated, which grant included many powers that we do not deem necessary to set forth at length; but among other powers granted was that "It shall have power and lawful authority to act as trustee in deeds of trust or mortgages upon real estate or personal property, or both, executed for the purpose of securing the payment of any indebtedness."

The 11th paragraph of the answer set out at length the powers granted, and among others, the power to act as trustee in deeds of trust, and to receive compensation for all services, and that the power to act as trustee is merely

a power incidental and inherent under its charter. It undertook to advise the court of the function or office of a quo warranto proceeding, and that the real party at interest in the instant case is not the State of Florida, but persons seeking the promotion of their selfish interests through the Attorney General, merely using the name of the State without disclosing the motive.

Continuing, the 11th paragraph of the answer states that it has acted as trustee for the past nine years of its existence, and that the proceeds have been obtained largely from northern investors, and used for the erection of apartment houses, hotels, and the upbuilding of the State of Florida; all of which may be a most commendable service, but cannot constitute an answer to an allegation of doing an act without complying with the law. It bears some resemblance to an effort to set up an estoppel, because an ungrateful State, after issuing its charter of authority to do certain acts, undertakes to prohibit the performance of those identical acts.

The charter can confer no greater power than the law directs. The construction of the statute given by the officers who are designated to execute the same, and the fact that such officers have given the construction claimed by defendant in this and many other charters, may be persuasive and evidence good faith, but thereby none the less unauthorized, for such officers are but the creatures authorized to act within limitations measured by the statute, and the creature is not greater than the creator.

The 11th paragraph in a large measure consists of the recitation of irrelevant and immaterial and evidentiary matters. To adopt the contention of the defendant, that the right to exercise a trust business is incident to its charter, without complying with the statute regulating the exercise of trust functions would render the protection of the law of no value, and it would be an impotent, abortive,

and meaningless statute. The building of apartment houses and hotels, obtaining the money largely from northern investors, and the general upbuilding of the State, as we have suggested, are most laudable transactions, but no answer to the petition.

Of necessity, a consideration of other assignments of error, have involved the third assignment of error, particularly a discussion of the first assignment. In fact, a ruling on the demurrer and the questions of law there involved, would have been sufficient, for the statement, of facts are fully set out in the petition to which the demurrer was directed. Counsel contend that "No corporation in Florida can operate as a corporation without having its business in some details conflict with some of the powers mentioned in the Act of 1911," and most strenuously argue that it was not the intent of the Legislature by the Act of 1911 to give the powers therein enumerated exclusively to trust companies, but claim any corporation organized by its charter to act as trustee, could act as trustee without qualifying as a trust company, urging paragraph 5 of section 3 of said Act as proof.

Section 3, Acts of 1911, in the subdivisions 1 to 18, enumerate the powers granted to "Every trust company" thereafter or theretofore organized. To prove the grant of such power was not limited to trust corporations, defendant urges section 5 of the same Act of 1911 as proof. Section 5 of Act of 1911 in this respect merely designates the officers who are authorized to take and subscribe an oath on behalf of the corporation.

A rather unusual statement is made by counsel for defendant to the effect that if the Act of 1911 is construed to mean what the plaintiff alleges, then "it is necessary to accept this Act of 1911 as meaning literally just what it says." We do construe it as meaning "literally just what it says," but we do not adopt the meaning of the interpre-

tation defendant urges. We again repeat that the law is that if a corporation desires to organize as a trust company, or transact a trust business, it must comply with the law applicable to trust companies, and if "any corporation" desires to act as trustee and receive and enjoy the rights, privileges, benefits, etc., incident to a trust company business such corporation cannot avoid the demands of the statute applicable to trust companies by saying "We did not organize as a trust company, yet we do a trust company business because it is incident to the business for which we are chartered," which is the essence of defendant's position.

It seems to us that the plain meaning of section 5 of the Act of 1911, now found in Compiled General Laws of Florida as Section 6130, the second paragraph of which is quoted in brief of defendant, was to designate certain named officers to make and subscribe for such corporation any and all oaths or affirmations required to be taken in the exercise of the respective offices mentioned.

While it may not fall strictly under a consideration of the third assignment, yet it is in point. Counsel for defendant urge that the Acts of 1921 and 1923 do not apply to defendant, "Even if they were intended to prevent ordinary corporation from exercising trust functions." In what respect is defendant not an "ordinary corporation?" Certainly the altruistic acts mentioned, in the way of inducing northern capitalists to invest in Florida property—building hotels and apartment houses, are not sufficient for such distinction, or why the same law should not apply to it that would apply to any "ordinary corporation."

We discover no ambiguity in section one of the Act of 1921 as cited. It is a plain, simple prohibition that "it shall be unlawful for *any corporation* to exercise any of the trust functions now prescribed by law of this State to be exercised by trust companies" or to exercise "*any* of the

duties . . . . . which may be granted or may heretofore have been granted . . . . . without *first* having obtained a charter . . . . . granting the exercise of such powers."

But defendant contends that its charter antedates the Act of 1921, and therefore it is not subject to the penalty provided in the Act. Conceding the defendant had a charter granted it to act "as a trust company," it had not complied with the law, whether or not inadvertently incorporated in the performance of a ministerial act and unauthorized. Indeed the defendant did not intend to incorporate nor was it incorporated as a trust company, but defendant claims the right to exercise such power as incident to its business, through powers granted by charter. Had defendant been chartered as a trust company, and complied with the law governing such matter at the date of the charter, then the question might have been raised as to impairing the obligation of a contract; but the mere fact that defendant was not incorporated as a trust or security company will not authorize it to engage in and perform the duties and enjoy the emoluments of such a corporation and not be bound by the law applicable to such bodies.

Defendant also contends that the "State may impair charter contract to protect health, public morals, public safety, or public welfare," but public health, safety, and morals are not involved. Morals may or may not necessarily be involved; nor health, but we are of opinion that the public welfare is most vitally interested. Urging northern capitalists to invest, to build apartment houses and hotels, and to issue bonds for raising money for such enterprises, secured by mortgages or deeds of trust on lands in Florida, is a most important public *welfare* measure in which the state is interested.

The exercise by the State of the right to protect the "public welfare" is strikingly manifested by the passage

of laws safeguarding the right to exercise trust functions, and the fact that the Public Welfare Board of the State may have defined powers, but have not included by name trust corporations, or trust functions, or at least not all trust functions, is no reason why the State cannot exercise the right to regulate under its police power corporations doing a trust business, even though incidental to the other charter powers. The trust having been partly performed and vested rights having accrued the Court of Chancery may on proper application appoint a trustee to completely discharge the trust.

What we have said in this opinion is determinative of the fourth assignment of error. The judgment below is accordingly affirmed.

Affirmed.

BUFORD, C.J. AND WHITFIELD, ELLIS, TERRELL AND BROWN, J.J., concur.

DAVIS, J., disqualified.