**PINELLAS COUNTY, A Political Subdivision of the State of Florida, v. W. T. BANKS and MARTHA C. BANKS, his wife, et al.**

19 So. (2nd) 1                                           January Term, 1944
May 26, 1944                                                      En Banc
On Rehearing Aug. 1, 1944

*John C. Blocker* and *Lewis H. Tribble,* for appellant.

*Carey & Harrison* for W. T. Banks and Martha C. Banks, his wife, *Lewis T. Wray,* for City of St. Petersburg, and *Charles J. Schuh,* for M. R. Schuh and Mary B. Schuh, his wife, appellees.

*Donn Gregory* for C. A. Ruschenberg, and *William E. Thompson,* as assistant city attorney for the City of Tampa, Florida, as amicus curiae.

584

TERRELL, J.:

In March, 1939, W. T. Banks and Martha C. Banks, his wife, purchased certain tax sale certificates from Pinellas County as provided by Chapter 18296, Acts of 1937, better known as the Murphy Act. The said certificates included subsequently omitted taxes up to and including the year 1939. In August, 1941, the lands described in said certificates were sold for the 1940 taxes and in June, 1942, they were sold for 1941 taxes. Ad valorem taxes were assessed against them for the years 1942 and 1943, all of which are now included in certificates therefor held by the clerk of the circuit court.

In January, 1944, W. T. and Martha C. Banks filed the bill of complaint in this cause seeing to foreclose their tax liens evidenced by said certificates. Pinellas County, the City of St. Petersburg, and the fee simple owners of the lands were made parties defendant. In February, 1944, Pinellas County instituted suit to perfect its title to all tax delinquent lands in the County as provided by Chapter 22079, Acts of 1943, the return day of said suit being March 1, 1944. Pinellas County answered the bill in the Banks suit asserting that complainants were barred from foreclosing their tax liens because, (1) They failed to perfect their tax title and redeem all tax sale certificates more than two years old in the hands of the clerk of the circuit court on the 4th day of August, 1943, (the date on which the tax sale certificates held by the County became two years old), and (2) They failed to purchase the tax sale certificates held by the clerk of the circuit court on or before the return date of the suit by Pinellas County to perfect its title to all tax delinquent lands, March 1, 1944.

Banks and his wife filed a replication to the answer of the County to their suit in which they challenged the constitutional validity of Chapter 22079. The fee simple owners of the lands answered the bill of complaint in the Banks suit but interposed no defense. The City of St. Petersburg answered the bill in the Banks suit but interposed no defense except its claim to the amount due it for ad valorem taxes and special assessments. On the issues thus made the court entered its final decree holding that Chapter 22079 did not

affect Banks' tax sale certificates and that if said act be construed to bar Banks' right of recovery as of August 4, 1943, or March 1, 1944, it is unconstitutional and void. Pinellas County appealed from the final decree.

The first question presented is whether or not Chapter 22079, Acts of 1943, may be construed as invalidating the tax sale certificates held by Banks and his wife or any other individual that are more than two years old.

Appellants contend that this question should be answered in the affirmative and rely on Leon County v. Crawford, 153 Fla. 604, 15 So. (2nd) 321, to support this contention. It is true that we considered Chapter 22079, Acts of 1943, in Leon County v. Crawford and had much to say about its scope and purpose but in that case we were concerned with those held by the County on which the taxes had not been paid and to which the clerk held a tax sale certificate more than two years old. We are convinced therefore that it does not rule the question presented in this case.

We are further convinced that complainant's tax sale certificates are not affected by Chapter 22079. The logic of this pronouncement is so fundamental that it would hardly seem necessary to support it with argument. In our view, the tax sale certificates held by complainants constitute property or property rights that cannot be destroyed by legislative fiat. The very terms of Chapter 22079 show that it was the intention of the Legislature to preserve these rights. The first section of the Act shows an intent to continue in full force and effect until discharged all outstanding liens for taxes and Sections 36, 42, and 44 when read in connection with other provisions show that it was designed to deal only with certificates held by the State, county, or municipality and was not intended to affect those in the hands of individuals.

We are also of the view that when Banks purchased his tax sale certificates, the Act authorizing them including the face of the certificates constituted a contract that is protected by the contract clause of the State and Federal constitutions. We are not unmindful of decisions upholding the power of the Legislature to regulate the time and manner of enforcing a

contract but such regulations must be reasonable and must leave the substance of the contract to be enforced. Ivey v. State, 147 Fla. 635, 3 So. (2nd) 345; State ex rel. Vars, v. Knott, 135 Fla. 206, 184 So. 752. Any conduct on the part of the Legislature that detracts in any way from the value of the contract is inhibited by the Constitution. Louisiana v. New Orleans, 102 U. S. 203, 26 L. Ed. 132; Edwards v. Kearzey, 96 U. S. 637, 24 L. Ed. 793. To accede to the contention of appellants would destroy complainant's contract and render Chapter 22079, Acts of 1943, unconstitutional and void.

The tax sale certificates held by Banks and those held by Pinellas County arise from an entirely different legislative source and are affected by different factual considerations. We find nothing in Chapter 22079, Acts of 1943, that shows an intent to modify the Murphy Act or in any way change the status under which the Banks certificates were held. We do not question the power of the Legislature to promulgate reasonable requirements for their liquidation but such requirements must give the certificate holder his day in court.

Aside from the constitutional aspect, we think the matter of good faith is sufficiently impelling to protect complainant's certificates. It has been the policy of the Legislature of Florida to pass acts from time to time to relieve the tax books of stale tax certificates and restore the lands to the tax rolls. The Murphy Act and the Futch Act are typical examples. The essence of these acts is special inducement to the former owner and others to redeem certificated lands. Investment in these certificates is as legitimate as investments in bank stock, government bonds, or any other intangible securities. We legalize pari-mutuel betting but we do not condemn the better because he picks a lucky horse and carries off the sweepstakes. We legalize other games of chance but we do not hobble the winner if he scoops a jackpot. If a tax certificate turns out to be worthless we do not think of recouping the purchaser; neither should we stigmatize him as a "Shylock" or a "tax shark" and cook up a ruse to "squeeze" him dry when he turns up with a rich find. When the Legislature invites plunging and defines the rules to plunge by,

it is the acme of bad faith to stigmatize one class of plungers and then whitewash the others.

Machiavelli is credited with the sentiment that the mass of mankind live contendedly so long as their honor or their property is not touched but that they will sooner forget the death of a father than the loss of their patrimony. Wisdom to cope with this attribute in the human animal is the secret of democratic administration. Democratic government will withstand the most stubborn assaults so long as the strains and stresses are equitably distributed but when burdens are imposed on one group and the privileges on another or when rights granted by law are unequally enjoyed by those in like situation, the citizen becomes skeptical and his confidence in the whole democratic set up is undermined.

It is therefore our view notwithstanding Chapter 22079, Acts of 1943, complainants should now be permitted to foreclose their tax sale certificates and participate on parity with other liens issued by the City and Pinellas County in the manner decreed by the circuit court.

Affirmed.

BUFORD, C. J., BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.

CHAPMAN, J., agrees to the conclusion.

TERRELL, J.:

### ON PETITION FOR REHEARING

On petition for rehearing it is urged that the purpose of Chapter 22079, Acts of 1943, was to strengthen and simplify the tax structure and stabilize tax titles in Florida. It is also urged that our opinion filed May 26, 1944, would aid materially in this if it required individual holders of state and county tax sale certificates to foreclose them before the county brings its suit to foreclose under Chapter 22079 or if they do not elect to foreclose prior to the county, they are construed to be parties defendant and have their claim adjudicated in that litigation.

It cannot be successfully contradicted that one of the prime purposes of Chapter 22079 was to stabilize tax titles and

restore tax certificated lands to the tax rolls. In our opinion filed May 26, 1944, we held that Chapter 22079, Acts of 1943, would not be construed as invalidating tax sale certificates held by individuals that were more than two years old. We see no reason to depart from or to modify that holding at this time; we think however that from an administrative standpoint, the purpose of Chapter 22079 would be greatly facilitated by construing it as accelerating the time in which holders of individual tax sale certificates may be required to bring suit to foreclose then and perfect their title.

We therefore hold that an individual holder of state and county tax sale certificates more than two years old may pay all subsequent county taxes and bring suit to foreclose them any time prior to the date upon which state and county tax sale certificates held by the clerk of the circuit court become two years old and the title to the property vests in the county under Chapter 22079 or he may acquire the certificates on which the county predicates its suit to foreclose if he prefers and delay his foreclosure further. If individual holders of tax sale certificates do not elect to foreclose their tax sale certificates in the manner thus prescribed, then they become parties defendant to the county's suit to foreclose under Chapter 22079. In such event, they will be relegated to their right under the law to participate ratably with other lien holders in the proceeds of any sale by the board of county commissioners as provided by Section 13, Chapter 22079 unless prior to entry of the final decree in the suit by the county to foreclose he applies for and is granted a tax deed in the manner provided by law.

We are also of the view that any time prior to final decree in the suit by the county to quiet its title, the holder of a state or county tax sale certificate may redeem any other unpaid taxes from the clerk of the court in the same manner as the owner may redeem, and make application for a tax deed, thus removing the property from the operation of the proceedings to quiet title. If, thereafter, and before tax deed issues, the original owner redeems the land, the tax deed applicant must be reimbursed for additional taxes paid by him in the manner provided by law for redemptions. We are of the view that the

rule herein may be applied to individual holders of municipal tax liens where issued and governed by like principles but nothing we have said has any application to drainage tax liens.

For the purpose thus stated, the petition for rehearing is granted and our opinion of May 26, 1944, is amended but in all other respects the petition for rehearing is denied and our former opinion is affirmed.

It is so ordered.

BUFORD, C. J., BROWN, THOMAS, ADAMS and SE-BRING, JJ., concur.

CHAPMAN, J., dissents.

I think the petition for rehearing should be granted.