POLSTON, J.
This case is before the Court on appeal from the First District Court of Appeal’s decision in Citrus Memorial Health Foundation, Inc. v. Citrus County Hospital Board, 108 So.3d 675 (Fla. 1st DCA 2013), which held that the special law enacted at chapter 2011-256, Laws of Florida, impairs the Foundation’s contracts in violation of article I, section 10 of the Florida Constitution.[1] For the reasons below, we affirm the First District’s decision.
I. BACKGROUND
In 1949, the Florida Legislature created the Citrus County Hospital Board, an independent special district charged with operating a public hospital in Citrus County, Florida. In 1990, the Hospital Board utilized section 155.40, Florida Statutes, which was enacted in 1982 and authorizes county hospital districts to lease their hospitals to specified Florida business entities so that public hospitals may more effectively compete with private hospitals.
Specifically, through two contracts — a lease and an agreement for hospital care— the Hospital Board turned the hospital’s operation and management over to the Citrus Memorial Health Foundation, Inc., a Florida not-for-profit corporation incorporated in 1987 under chapter 617, Florida Statutes. Transferring control of the hospital to the Foundation through these agreements, which are effective until 2033, allows the hospital to avoid participating in the State retirement program and to engage in joint ventures previously not available to it because of the Hospital Board’s public status. The Foundation has likewise benefited from its relationship with the Hospital Board, by for example, using its status as the operator of a public hospital and its accountability to the Hospital Board to obtain sovereign immunity and recalculate its Medicaid rates.
Though the Hospital Board and Foundation are legally separate entities, the Hospital Board has been involved in various ways with the Foundation’s activities. For example, the Hospital Board facilitated the Foundation’s incorporation, and the Foundation’s original articles of incorporation listed among its purposes “[t]o operate exclusively for the benefit of and to carry out the purposes of but not in any way as an agency of the Citrus County Hospital Board.” Further, for many years after the Foundation’s incorporation, including in 1990 when the lease and agreement for hospital care were executed, the Hospital Board, through its five trustees, held the majority position on the Foundation’s governing board. Significantly, however, the Foundation later amended its articles of incorporation to eliminate the Hospital Board’s majority position.
Thereafter, disputes arose between the parties. In 2011, the Legislature became involved and enacted chapter 2011-256, Laws of Florida, based on its determinations that “meaningful oversight by the hospital board is necessitated in light of the [Foundation’s] status as an instrumen *1105 tality of the hospital district,” that “restoration of meaningful hospital board representation on the board of the [Foundation] and implementation of appropriate accountability and oversight by the hospital board are necessitated in order to ensure the sovereign immunity status of the [Foundation] as an instrumentality of the hospital district,” and that “the ability of the hospital board to continue to act in the public interest on behalf of the taxpayers of Citrus County requires mechanisms to ensure adherence to the hospital board’s public responsibilities.” Ch.2011-256, Laws of Fla.
In pertinent part, section 3 of the special law reenacts the Hospital Board’s charter. Section 16 of the charter includes fifteen subsections, that, for the first time, specifically address the Hospital Board’s relationship with the Foundation (or any future lessee) and that are “in addition to the requirements for any [ ] lease set forth in section 155.40.” Ch.2011-256, § 3(16), at 59-60, Laws of Fla. For example, these • provisions (i) require the Hospital Board to approve the Foundation’s articles of incorporation and bylaws (including those currently in effect) — section 16(2); (ii) require the Foundation to amend its articles of incorporation so that the Hospital Board’s trustees constitute a majority of its voting directors — section 16(5); (iii) require the Hospital Board to approve all Foundation directors, including current directors — section 16(6); (iv) require the Hospital Board to approve certain borrowing, indebtedness, policies, budgets, capital projects, and expenditures — sections 16(8) and (10); (v) require the Hospital Board to approve the Foundation’s annual and operating capital budget — section 16(9); (vi) allow the Hospital Board to order, at the Foundation’s expense, an independent audit of the Foundation’s fiscal management of the hospital — section 16(11); and (vii) require that any dispute between the Foundation and the Hospital Board be subject to the statutory procedures applicable to governmental disputes — section 16(15).
The Foundation filed suit against the Hospital Board and the State in circuit court challenging the special law and seeking, among other things, a declaratory judgment that section 16 of the Hospital Board’s charter as enacted in section 3 of the special law applies to impair its articles of incorporation, lease, and agreement for hospital care in violation of article I, section 10 of the Florida Constitution. After dismissing the State as a party, the circuit court granted summary judgment for the Hospital Board based on its conclusions that the Foundation is prohibited from challenging the constitutionality of the special law because it is a public or quasi-public corporation and that the special law does not impair the Foundation’s contracts.
On appeal, the First District reversed, holding that, as applied to the Foundation, the special law “significantly alters the parties’ contractual rights and is an unconstitutional impairment of their contracts so as to be prohibited by [a]rticle I, [s]ection 10.” Citrus Mem’l, 108 So.3d at 676.
II. ANALYSIS
The dispositive issues before this Court are whether the contract ■ clause of the Florida Constitution applies to the Foundation’s contracts and, if so, whether, as applied, the special law unconstitutionally impairs the Foundation’s contracts. As explained below, we resolve both of these issues in the Foundation’s favor.
A. The Contract Clause Applies to the Foundation’s Contracts
As a threshold matter, both the Hospital Board and the State argue that the Foundation should not be heard to complain about the special law’s alleged impairment of its contracts because it is a *1106 public or' quasi-public corporation and therefore not entitled to protection under the contract clause. We disagree.[2]
Article I, section 10 of the Florida Constitution provides that “[n]o ... law impairing the obligation of contracts shall be passed.” As part of the Florida Constitution’s Declaration of Rights, this right belongs to the people, including corporations, as against the government. See Traylor v. State, 596 So.2d 957, 963 (Fla.1992) (explaining that “[e]ach right” in the Declaration of Rights is “a distinct freedom guaranteed to each Floridian against government intrusion” and “operates in favor of the individual, against [the] government”); see also State Farm Mut. Auto. Ins. Co. v. Gant, 478 So.2d 25, 26 (Fla.1985) (applying the contract clause to a corporation).
Although Florida law is clear that corporations, like individuals, are entitled to protection under the contract clause, this Court has not addressed whether the contract clause protects a corporation that has contracted with a hospital district under section 155.40, Florida Statutes, to operate and manage a public hospital. In other contexts not involving the contract clause, Florida courts have precluded State agencies and local governments from challenging the constitutionality of certain legislation. For example, in Department of Education v. Lewis, this Court held that “State officers and agencies must presume legislation affecting their duties to be valid, and do not have standing to initiate litigation for the purpose of determining otherwise.” 416 So.2d 455, 458 (Fla. 1982) (addressing a challenge to an appropriations law under article III, section 12 of the Florida Constitution); see also Fla. Dep’t of Agrie. & Consumer Seros, v. Miami-Dade Cnty., 790 So.2d 555, 558 (Fla. 3d DCA 2001) (relying on Lewis to hold that county and city lacked standing under article I, section 12 of the Florida Constitution to challenge the constitutionality of the statutory citrus eradication program).
Further, in O’Malley v. Florida Insurance Guaranty Ass’n, 257 So.2d 9, 11 (Fla.1971), this Court examined whether a legislatively-created corporation was public or private for purposes of an alleged violation of article III, section ll(a)(12), which prohibits a special law or general law of local application pertaining to or granting any privilege to a private corporation. In so doing, we distinguished private and public corporations as follows:
Private corporations are those which have no official duties or concern with the affairs of government, are voluntarily organized and are not' bound to perform any act solely for government benefit, but the primary object of which is the personal emolument of its stockholders.
Examples of public corporations in Florida are: the rural electrical cooperatives, city housing authorities, The Inter-American Cultural and Trade Center Authority, the Soil and Water Conservation Districts, and the Jacksonville Expressway Authority. Their business ordinarily is stipulated by the Legislature to fill a public need without private profit to any organizers or stockholders. Their function is to promote the public welfare and often they implement governmental regulations within the state’s police power. In a word, they are organized for the benefit of the public.
O’Malley, 257 So.2d at 11 (citations omitted); see also Forbes Pioneer Boat Line v. Bd. of Com’rs of Everglades Drainage Dist., 77 Fla. 742, 82 So. 346 (1919) (discussing public, quasi-public, and private corporations in determining that the legis *1107 latively-created board of commissioners of the drainage district was a “public quasi corporation” that had only the authority delegated to it by law).
However, our decision in O’Malley did not address a corporation’s standing to allege a contract clause violation. Further, unlike the legislatively-created corporation at issue in O’Malley, the Legislature did not create the Foundation, and the Foundation is not a State agency or local government. Instead, the Foundation was incorporated as a not-for-profit corporation under chapter 617, Florida Statutes, just as any other Florida not-for-profit corporation would be, for the specific purpose of taking control of the public hospital — by contract — as authorized by section 155.40. Moreover, while there is no indication that the corporation in O’Malley was created to avoid obligations applicable to public entities, even though the Foundation operates a hospital for the public’s benefit, spends public money,[3] and uses public property in the process, it “was used by the [Hospital] Board for the express purpose of avoiding statutory and constitutional limitations which would pertain to the [Hospital] Board as a public entity.” Citrus Mem’l, 108 So.3d at 677. Given that the very purpose of section 155.40 is to contractually transfer control of public hospitals to entities like the Foundation, we refuse to apply O’Malley in a way that would effectively render the contracts used to accomplish this purpose meaningless. See Pan-Am Tobacco Corp. v. Dep’t of Corr., 471 So.2d 4, 5 (Fla.1984) (recognizing that “[w]here the [Legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, the [Legislature has clearly intended that such contracts be valid and binding on both parties”).
We also refuse to rely on representations about the Foundation’s status that the parties have made in different contexts over the years to impute the Hospital Board’s status onto the Foundation. The parties’ representations simply do not alter the fact that the Foundation is not a creature of the Legislature and is a distinct legal entity from the Hospital Board. Nor do the facts that the Hospital Board was involved with the Foundation’s incorporation, previously controlled its board, and is its sole member somehow remove the Foundation’s contracts from the protection afforded by the contract clause.
Accordingly, we hold that the contract clause applies to the Foundation’s contracts.
B. The Special Law Unconstitutionally Impairs the Foundation’s Contracts
The Hospital Board and the State next argue that, even if the contract clause applies, the First District erred by concluding that the special law unconstitutionally impairs the Foundation’s articles of incorporation, lease, and agreement for hospital care. We disagree and hold that, as applied to these contracts, section 16 of the Hospital Board’s charter as enacted in section 3 of the special law is unconstitutional.[4]
*1108 The contract clause prohibits any “law impairing the obligation of contracts.” Art. I, § 10, Fla. Const. We have defined impairment
as meaning to make worse; to diminish in quantity, value, excellency, or strength; to lessen in power; to weaken. Whatever legislation lessens the efficacy of the means of enforcement of the obligation is an impairment. Also if it tends to postpone or retard the enforcement of the contract, it is an impairment.
State ex rel. Woman’s Benefit Ass’n v. Port of Palm Beach Dist, 121 Fla. 746, 164 So. 851, 856 (1935) (emphasis omitted). And we have “generally prohibited all forms’ of contract impairment.” State, Dep’t of Transp. v. Edward M. Chadbourne, Inc., 382 So.2d 293, 297 (Fla.1980); see also Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077, 1080 (Fla.1978) (“Any conduct on the part of the [Legislature that detracts in any way from the value of the contract is inhibited by the Constitution.” (quoting Pinellas Cnty. v. Banks, 154 Fla. 582,19 So.2d 1, 3 (1944))).
Section 16 of the Hospital Board’s charter as enacted in section 3 of the special law meets our definition of impairment. It eliminates the Foundation’s ability to operate and manage the hospital as it has contracted to do by turning the Foundation’s governance over to the Hospital Board in disregard of the Foundation’s status as a separate legal entity.[5] See generally Marion Mortg. Co. v. State, 107 Fla. 472, 145 So. 222, 223 (1932) (agreeing that a corporate charter “is a contract between the state and [the corporation], which contract cannot be impaired by the Legislature”). And it also obligates the Foundation to comply with public accountability and financial responsibility measures that are mentioned nowhere in the parties’ agreements and that are “in addition to the requirements for any [ ] lease set forth in section 155.40.”[6] Ch.2011-256, § 3(16), at 59, Laws of Fla. In other words, as the First District cogently stated, the special law “is a rewrite of the parties’ contractual agreements and the imposition of further obligations on the Foundation, while permitting the [Hospital] Board’s privatization of hospital management functions as [authorized by section 155.40].” Citrus Mem’l, 108 So.3d at 678.
In light of this impairment, we hold that section 16 of the Hospital Board’s charter as enacted in section 3 of the special law is unconstitutional as applied to the Foundation’s contracts. See Cohn v. Grand Condo. Ass’n, Inc., 62 So.3d 1120, 1122 (Fla. 2011) (affirming the district court’s decision that a state' statute was unconstitutional “because’ [it] impairs the obligation of contract as applied to [the plaintiff]”); see also Dewberry, 363 So.2d at 1080 (“It is axiomatic that subsequent legislation which diminishes the value of a contract is repugnant to our Constitution.”).
*1109 III. CONCLUSION
For the foregoing reasons, we affirm the First District’s decision.
It is so ordered.
LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion.

. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

. We review whether the contract clause applies to the Foundation’s contracts de novo. See Dep’t of Educ. v. Lewis, 416 So.2d 455, 458 (Fla. 1982).

. Under the agreement for hospital care, the Foundation must submit its annual operating and capital budgets to the Hospital Board so that the Hospital Board may determine, "in its discretion,” the amount of tax funds necessary for the Foundation to meet its obligation to provide hospital services for Citrus County residents and appropriate that amount to the Foundation. From 2006-2010, on average, tax funds received from the Hospital Board comprised less than 5% per year of the Foundation’s total revenues and did not exceed 6.3% in any year.

. We apply a de novo standard of review. See Scott v. Williams, 107 So.3d 379, 384 (Fla. 2013). '

. For example, the special law requires the Hospital Board to approve the Foundation’s articles of incorporation and bylaws (including those currently in effect); requires the Foundation to amend its articles of incorporation so that the Hospital Board's trustees constitute a majority of the Foundation's voting directors; and requires the Hospital Board to approve all Foundation directors, including current directors. See ch.2011-256, §§ 3(16)(2), (5), (6), at 59, Laws of Fla.

. The special law requires the Hospital Board to approve the Foundation's annual and operating capital budget as well as certain borrowing, indebtedness, policies, budgets, capital projects, and expenditures of the Foundation; allows the Hospital Board to order, at the Foundation's expense, an independent audit of the Foundation's fiscal management of the hospital; and requires that any dispute between the Foundation and the Hospital Board be subject to the statutory procedures applicable to governmental disputes. Id. §§ 3(16)(8)-(11), (15), at 59-60.